**EXHIBIT C**



1  JACK RUSSO State Bar No. 96068
   CHRISTOPHER SARGENT State Bar No. 246285
2  RUSSO & HALE LLP
   401 Florence St.
3  Palo Alto, CA 94301
   Tel.: 650-327-9800
4  Fax: 650-327-3737
   Email: jrusso@computerlaw.com
5  Email: csargent@computerlaw.com

6  Attorneys for Plaintiff
   MOSAIC SYSTEMS, INC.
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SANTA CLARA

10

11 MOSAIC SYSTEMS, INC., a California      ) Case No. 1-04 CV016867 (Consolidated for
                                           ) limited purposes with Case No. 1-06 CV
12 corporation,                            ) 072920)
                                           )
13                    Plaintiff,           )
                                           ) [PROPOSED] ORDER
14        v.                               )
                                           )
15 CISCO SYSTEMS, INC., a Delaware         )
   corporation, and DOES 1 through 20,     )
16 inclusive,                              )
                                           )
17                    Defendants.          )
                                           )
18                                         )
   MOSAIC SYSTEMS, INC.,                   )
19                                         )
                      Plaintiff,           )
20                                         )
          v.                               )
21                                         )
   ANDREAS BECHTOLSHEIM, and DOES          )
22 1-20,                                   )
                                           )
23                    Defendants.          )
                                           )
24

25

26

27

28 [Proposed] Order                    1                    1-04 CV016867

1           WHEREAS, on or about October 13, 2006, Plaintiff Mosaic Systems, Inc. (Plaintiff" or

2 "Mosaic") filed the Case No. 1-06 CV 072920 against Andreas Bechtolsheim (the "*Mosaic v.*

3 *Bechtolsheim* Action");

4           WHEREAS, on or about May 21, 2007, Defendant Cisco Systems, Inc. ("Defendant" or

5 "Cisco") filed a motion to consolidate the *Mosaic v. Bechtolsheim* Action for all purposes

6 including for discovery, motion practice and for trial;

7           WHEREAS, Mosaic opposed Cisco's consolidation motion and has requested that the

8 *Mosaic v. Bechtolsheim* Action be set for a separate trial after trial in the *Mosaic v. Cisco* Action;

9           NOW, THEREFORE, for good cause shown, after hearing argument by counsel for the

10 parties, the Court hereby orders as follows:

11     1.     The *Mosaic v. Bechtolsheim* Action shall be consolidated with the *Mosaic v.*

12            *Cisco* Action for purposes of discovery and motions but the Court defers and

13            reserves its decision on whether the two cases will be consolidated for trial;

14     2.     The hearing on the pending demurrer by Defendant in the *Mosaic v. Bechtolsheim*

15            Action shall remain on calender for July 3, 2007 before this Court;

16     3.     The Trial Setting Conference currently set for July 17, 2007 shall be reset as a

17            Case Management Conference to occur on July 17, 2007, *at 10:00 a. m.*

18     4.     The parties shall meet and confer on and after July 3, 2007 with respect to putting

19            the *Mosaic v. Bechtolsheim* Action at issue and with a view for setting a new Trial

20            Setting Conference in this action; and,

21

22

23

24

25

26

27

28   [Proposed] Order              2              J-04 CV016867

1    5.    The parties also shall meet and confer on and before July 3, 2007 with respect to

2           scheduling of deposition and other discovery to be completed before the end of

3           this calender year.

4

5  Entered on this 18th day of June, 2007.

6  IT IS SO ORDERED:

7

8

9  Honorable Kevin McKenney

10

11

12  APPROVED AS TO FORM:

13                                   MORGAN, LEWIS & BOCKIUS LLP

14  Dated: June 13, 2007            By: _____

15                                      Howard Holderness, Esq.
                                        Lorelei A. Craig, Esq.
16
                                     Attorneys for Defendants
17                                   ANDREAS BECHTOLSHEIM
                                     and CISCO SYSTEMS, INC.
18

19

20

21

22

23

24

25

26

27

28  [Proposed] Order                        3                        1-04 CV016867

**EXHIBIT  D**

COPY

1   JACK RUSSO (State Bar No. 96068)
    CHRISTOPHER SARGENT (State Bar No. 246285)
2   RUSSO & HALE LLP
    401 Florence Street
3   Palo Alto, CA 94301
    Phone: 650-327-9800
4   Email: jrusso@computerlaw.com
    Email: csargent@computerlaw.com
5
    Attorneys for Plaintiff
6   MOSAIC SYSTEMS, INC.

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SANTA CLARA

10  _____

11  MOSAIC SYSTEMS, INC., a                )   **Case No. 1-06-CV072920**
    California corporation,                )
12                                         )   **FIRST AMENDED COMPLAINT FOR**
                                           )   **BREACH OF FIDUCIARY DUTY**
13             Plaintiff,                  )   **(LOYALTY), BREACH OF FIDUCIARY**
                                           )   **DUTY(CARE), BREACH OF FIDUCIARY**
14             v.                          )   **DUTY (HONESTY), BREACH OF**
                                           )   **FIDUCIARY DUTY(GOOD FAITH),**
15  ANDREAS BECHTOLSHEIM, an               )   **BREACH OF FIDUCIARY**
    individual, and DOES 1-20,             )   **DUTY(LOYALTY-PATENT), BREACH**
16                                         )   **OF FIDUCIARY DUTY (CARE-TRADE**
               Defendants.                 )   **SECRET), CONSTRUCTIVE FRAUD,**
17                                         )   **AND CONCEALMENT**
                                           )
18                                         )   **[JURY TRIAL DEMANDED]**
                                           )
19  _____        )

20

21

22

23

24

25

26

27

28

_____

First Amended Complaint                                    Case No. 1-06-CV072920

1         Plaintiff Mosaic Systems, Inc. ("Plaintiff" or "Mosaic") alleges against Defendant Andreas

2   Bechtolsheim ("Defendant" or "Bechtolsheim") as follows:

3                                **INTRODUCTION**

4      1.      This is an action for breach of fiduciary duty (duty of loyalty), breach of fiduciary

5   duty (duty of care), breach of fiduciary duty (duty of honesty), breach of fiduciary duty (duty of

6   good faith), breach of fiduciary duty (duty of loyalty - theft of patent), breach of fiduciary duty

7   (duty of care - theft of trade secret), constructive fraud, and concealment (collectively, the

8   "Action") following Defendant's failure to uphold a director's fiduciary duties of loyalty, good

9   faith and due diligence. As a member of Plaintiff Mosaic's Board of Directors **and** as Vice

10   President and General Manager of the Cisco unit with which Mosaic sought to do business,

11   eventually Mosaic's only customer, Defendant dominated Mosaic completely. Defendant exerted a

12   unique influence and undue control over Mosaic with respect to its interaction with Cisco.

13   Defendant made empty promises and bad faith directives to Plaintiff, the reliance on which caused

14   Mosaic to repeatedly divulge valuable trade secrets, proprietary materials, chip design

15   documentation, and other confidential information (collectively the "Trade Secrets and

16   Confidential Information") to Defendant's employer, Cisco Systems, Inc ("Cisco"). Defendant's

17   statements and actions caused Plaintiff to waste thousands of person-hours working hand-in-hand

18   with Cisco to design and test a Static Random Access Memory ("SRAM") semiconductor chip for

19   which Plaintiff ultimately received no remuneration. In breach of his fiduciary duties, defendant

20   allowed individuals under his supervision at Cisco to wrongfully apply for a patent stolen from,

21   derived from, and based upon Plaintiff's Trade Secrets and Confidential Information and other

22   Mosaic knowledge. Defendant also improperly directly disclosed said information to Mosaic

23   competitors and other third parties. Defendant Bechtolsheim's violation of and failure to uphold

24   his fiduciary duties caused Plaintiff to disclose its Trade Secrets and Confidential Information to

25   Cisco, and caused Plaintiff to invest its time and engineering expertise in Cisco to the exclusion of

26   other business partners and opportunities. Plaintiff seeks damages in amount to be determined at

27   trial.

28   //

1

## PARTIES

2          2.          Plaintiff Mosaic is a corporation duly organized and existing under California law

3  with its principal office based in Los Altos, California, and was formerly based in Sunnyvale,

4  California.

5          3.          Defendant Bechtolsheim is an individual residing, on information and belief, in

6  Portola Valley, California.

7          4.          Defendants Does 1 through 20, inclusive, whether individuals, corporations,

8  associations or otherwise are fictitious names of defendants whose true names and capacities are at

9  this time unknown to Plaintiff. Each of said fictitiously named defendants, whether individuals,

10  corporations, associations or otherwise is in some way liable or responsible to Plaintiff proximately

11  thereby as hereinafter alleged. At such time as defendants' true names become known to Plaintiff,

12  Plaintiff will ask leave of this Court to amend this Complaint to insert said true names and

13  capacities.

14          5.          Plaintiff is informed and believes and on that basis alleges that Cisco along with

15  Defendants Does 1 through 20 did agree together and conspire together, with knowledge of their

16  unlawful purpose, to take the unlawful actions alleged in this Complaint, and were acting within

17  the full course and scope of their illegal conspiracy, with the full knowledge and consent, either

18  express or implied, of each of the other Defendants.

19

## JURISDICTION AND VENUE

20          6.          This Court has general jurisdiction of all claims herein arising under California law.

21          7.          Venue is proper in this Court because the fiduciary and other obligations of

22  Defendant arose and were to be performed in Santa Clara County, California.

23

## BACKGROUND FACTS

24          8.          Defendant Bechtolsheim is the former Vice President and General Manager of the

25  Gigabit Systems Business Unit at Cisco. Plaintiff is informed and believes and on that basis

26  alleges that Defendant Bechtolsheim's responsibilities in Cisco's Gigabit Systems Business Unit

27  included, but were not limited to, developing network switching technologies such as the Catalyst

28  4000 Gigabit Switch family.

---

**First Amended Complaint**                              3                              **Case No. 1-06-CV072920**

1    9.    Mosaic is a fabless semiconductor company specializing in the design, development
2 and engineering of high performance SRAM for the networking and communications marketplace.

3    10.    Beginning in mid-2000, Defendant Bechtolsheim communicated to Mosaic that
4 Cisco was interested in developing a high-speed SRAM chip, and that Cisco was interested in
5 working with Mosaic to do so. At the time, Mosaic knew how to make high performance SRAM
6 chips that were significantly faster than previously developed chips. Where most SRAM suppliers
7 at the time were only able to project the ability to supply parts in the 300 - 400 MHz range for high
8 performance SRAM, Mosaic was already forecasting the ability to achieve 750 - 1000 MHz.

9    11.    Defendant Bechtolsheim encouraged Mosaic to work with Cisco on the
10 development of a custom SRAM chip, and assured Mosaic that no other competitor could match
11 the speed and capabilities of the SRAM design offered by Mosaic. On this basis, Mosaic entered
12 into serious business discussions with Cisco regarding collaborating to design and develop a
13 high-speed SRAM chip which Cisco would ultimately purchase from Mosaic.

14    12.    On July 28, 2000, Mosaic closed Series A funding. Mosaic was able to raise over
15 $2.5 million, based largely on the strong indications from both Defendant Bechtolsheim and Cisco
16 that Mosaic was going to be a chief supplier of Cisco's SRAM needs. In fact, Defendant
17 Bechtolsheim himself was an investor in Mosaic. Defendant Bechtolsheim joined Mosaic's Board
18 of Directors at this time, assuming an active director's role over the company, and entering into a
19 clear fiduciary relationship with Mosaic.

20    13.    After becoming a member of Mosaic's Board of Directors, Defendant Bechtolsheim
21 became increasingly dominant over Mosaic as a result of his investment in Mosaic, his
22 membership on the Board, and his role as a primary representative of Mosaic's most important,
23 and later only, customer – Cisco.

24    14.    After receiving Series A funding, Mosaic endeavored to hire a team of engineers
25 who could make the discussed SRAM a reality for Cisco. In January of 2001, engineering
26 candidate Rich Roy met with then Mosaic CEO Suren Alexanian and Defendant to discuss Cisco's
27 need for high-speed SRAM chips and the role Mosaic could play to meet that need. Defendant

28

---

**First Amended Complaint**                    4                    **Case No. 1-06-CV072920**

1  Bechtolsheim convinced Mr. Roy that Cisco was serious about working with Mosaic to design

2  SRAM chips, and Mr. Roy joined Mosaic as Vice President of Engineering at this time.

3  **BECHTOLSHEIM DIRECTS MOSAIC TO DESIGN DDR3 SRAM FOR CISCO**

4  15.    In 2001, IBM advertised that it could achieve 750 MHz high performance SRAM at

5  a very high price per unit, and provided Cisco with an SRAM specification called "DDR3." In

6  March 2001, at another meeting with Mr. Alexanian and Mr. Roy, Defendant Bechtolsheim

7  delivered the IBM specification to Mosaic and instructed Mosaic to try to design a chip that fit

8  IBM's specification. Defendant Bechtolsheim told Mosaic that Cisco would be the primary

9  customer for the designed chip, and that Cisco wanted Mosaic to serve as the second source to

10  IBM on the project.

11  16.    Defendant Bechtolsheim's personal assurances, coupled with his status as both a

12  director of Mosaic and as Vice President and General Manager of the business unit at Cisco

13  seeking SRAM, convinced Mosaic to begin work on the DDR3 test chip for Cisco with the

14  understanding that Mosaic would be a supplier of the chip. Defendant firmly insisted upon this

15  path for Mosaic, and assured Mosaic that its technology was far ahead of the competition and that

16  Mosaic was definitively going to be a source of SRAM for Cisco. Had Defendant Bechtolsheim

17  not made such assurances, Mosaic would not have invested its time and resources in the DDR3

18  project.

19  17.    When Mosaic started working on DDR3, Mosaic initially tried to mold it to fit both

20  Sun Microsystems' ("Sun") and Cisco's needs. However, Defendant Bechtolsheim convinced

21  Mosaic that Cisco's interests in pursuing networking, and its specific priorities with respect to the

22  chip specifications, were significantly different than those of Sun. With repeated assurance from

23  Defendant that Cisco's demand and potential pricing for the SRAM product was such that all

24  Mosaic had to do was deliver the chip and Cisco would purchase the chips from Mosaic, Mosaic

25  made the decision to optimize for Cisco's need.

26  18.    To protect its Trade Secrets and Confidential Information, Mosaic requested that

27  Cisco enter into a written Mutual Non-Disclosure Agreement ("NDA"). Such an agreement was

28  entered into on or about May 2, 2001. Defendant Bechtolsheim signed the NDA on behalf of

---

**First Amended Complaint**                                    5                        **Case No. 1-06-CV072920**

1  Cisco. The NDA stipulated that Mosaic's Trade Secrets and Confidential Information could be
2  used only for the purposes of evaluating a potential business relationship. Plaintiff trusted
3  Defendant, as a Director on Mosaic's Board, and Cisco that Cisco would honor its agreements, and
4  not use any Trade Secrets and Confidential Information disclosed by Plaintiff without an express
5  agreement allowing such use.

6      19.     Mosaic began work on the DDR3 design and, under the NDA, disclosed to Cisco
7  the architecture and technology details describing how the DDR3 could meet Cisco's power,
8  performance, and die size needs - all of which are important for pricing. Even with the NDA,
9  Mosaic would not have disclosed its Trade Secrets and Confidential Information to Cisco
10 regarding the DDR3 design had it not been for Defendant Bechtolsheim's specific direction that
11 Mosaic do so. An initial test chip was "taped out" during May 2001, and in October, Mosaic was
12 able to confirm for Cisco the capability of meeting an 800 MHz address rate in standard TSMC
13 0.18 micron process technology. Mosaic would not have done this work for Cisco had it not been
14 for Defendant Bechtolsheim's assurances to Mosaic that it would be a supplier of SRAM to Cisco.

15     20.     The success of the test chip and strong indications from both Defendant and Cisco
16 that Mosaic would be a source of SRAM for Cisco enabled Mosaic to close a Series B round of
17 funding in the end of 2001 and early 2002. Mosaic was able to raise over $4 million, and once
18 again Defendant Bechtolsheim was an investor.

19     21.     Mosaic continued to work on the DDR3 with the understanding that it would be a
20 supplier of SRAM for Cisco. After committing millions of dollars of Mosaic investment money
21 and thousands of person hours to develop the DDR3 chip for Cisco, Mosaic was ready to do a
22 "tape out" of the DDR3 chip to silicon in the Summer of 2002. This would have cost the company
23 a major expense (over one million dollars) and would have put the company in a very unstable
24 financial situation in the absence of any formal commercial agreement. Despite Cisco's failure to
25 formally commit to the supplier agreement promised by Defendant, Defendant Bechtolsheim
26 strongly encouraged Mosaic to tape out.

27     22.     However, in May 2002, Mosaic learned that Cisco was having problems with the
28 DDR3 architecture and its new processor, problems which Defendant had not disclosed when he

First Amended Complaint                          6                    Case No. 1-06-CV072920

1  directed Mosaic to "tape out." IBM claimed that its design could not achieve the required 750
2  Mhz operation. With the performance of IBM less certain, Cisco had growing concerns over the
3  DDR3 SRAM design.

4      23.    On June 6, 2002, Defendant Bechtolsheim, Rich Roy, Tony Moroyan (the new
5  CEO of Mosaic), Dipankar Bhattacharya (a Cisco manager), and Jim Weaver (a Cisco engineer)
6  met to discuss the technical problems that had arisen with DDR3. At this meeting, Mosaic
7  presented results from simulations showing the that 750 Mhz SRAM was both viable and within
8  budget. Impressed with these results, Cisco proposed the idea of scrapping IBM's DDR3
9  specification and working directly with Mosaic to create a new, custom SRAM.

10     **BECHTOLSHEIM DIRECTS MOSAIC TO DESIGN CSRAM FOR CISCO**

11     24.    Between June and July 2002, Mosaic and Cisco worked together to create the
12  CSRAM specification ("CSRAM Spec") in order to solve the technical problems of DDR3.
13  During this time, Mosaic and Cisco engineers (including Defendant) communicated in person and
14  by e-mail nearly every day regarding possible design techniques and implementations to solve
15  Cisco's problems. Many of these e-mails contained Plaintiff's Trade Secrets and Confidential
16  Information.

17     25.    Through Defendant's representations, Plaintiff reasonably believed that Cisco
18  would abide by the NDA, and that Plaintiff was the only company Cisco was working with to
19  develop this type of technology. Defendant never disclosed to Plaintiff that Cisco was in fact
20  evaluating Plaintiff's competitors, using Trade Secrets and Confidential Information disclosed
21  under the NDA to develop competitive bids, or that the Trade Secrets and Confidential Information
22  were being distributed to third-parties without Plaintiff's knowledge or consent.

23     26.    Defendant Bechtolsheim had personal knowledge that Cisco was using and
24  disclosing Plaintiff's Trade Secrets and Confidential Information in breach of the NDA.
25  Defendant Bechtolsheim did not inform Plaintiff of this fact, and moreover, continued to direct
26  Mosaic to work with Cisco in the development of the CSRAM chip, and continued to direct
27  Mosaic to disclose its Trade Secrets and Confidential Information to Cisco.

28  //

First Amended Complaint                     7                    Case No. 1-06-CV072920

1    27.    Plaintiff first became aware of and concerned with competitors for Cisco's

2    business with respect to CSRAM chips in August 2002, when Defendant told Plaintiff that Micron

3    Technology, Inc. ("Micron") gave Cisco a quote of one hundred dollars ($100) per chip. This

4    initial quote was unrealistically low, and Plaintiff later learned from Micron employees that Micron

5    had never, in fact, provided Cisco a one hundred dollar ($100) quote for the CSRAM chip.

6    Plaintiff is informed and believes and on that basis alleges that Defendant Bechtolsheim

7    intentionally misrepresented the Micron "quote" in order to drive the cost of the CSRAM chip

8    lower against Mosaic's interests.

9    **THE ACQUISITION OFFER**

10    28.    In September 2002, Defendant Bechtolsheim represented that he had instructed his

11    unit at Cisco to either acquire Plaintiff or otherwise provide economic remuneration. Defendant

12    intentionally or negligently did not disclose that Cisco was disregarding instructions from

13    Defendant. In fact, Defendant purposely or negligently created the false impression at Mosaic that

14    he could direct Cisco to acquire Plaintiff, or to otherwise ensure that Mosaic would be provided

15    adequate compensation for Mosaic's work on CSRAM to date. Cisco then informed Plaintiff that

16    Cisco was interested in acquiring Plaintiff, which directly followed Defendant's similar

17    representation. Cisco began to conduct due diligence, and as part of the due diligence, asked

18    Plaintiff to provide even further updated and highly detailed Trade Secrets and Confidential

19    Information about the CSRAM design, including, but not limited to, extremely sensitive Trade

20    Secrets and Confidential Information such as die size, power numbers, costs, and design

21    techniques. In reliance on Defendant Bechtolsheim's authoritative promises and assurances,

22    Plaintiff provided these further Trade Secrets and Confidential Information.

23    29.    On October 1 and October 2, 2002, as part of Cisco's continued due diligence for its

24    planned acquisition of Plaintiff, Cisco requested the résumés from five of Plaintiff's engineers. On

25    or about October 2, 2002, Cisco arranged a meeting with these five engineers. During this meeting,

26    Cisco inquired about the engineers' current salaries, their interest in working on Cisco projects in

27    addition to the current CSRAM project, and their willingness to transition their work from Mosaic

28    to Cisco.

---

**First Amended Complaint**                    8                    **Case No. 1-06-CV072920**

1       30.    After the completion of the October 2, 2002 meeting between Plaintiff and

2 Cisco, Plaintiff reasonably relied on Cisco and Defendant's representation that it was being

3 acquired by Cisco, and Plaintiff disclosed the requested additional Trade Secrets and Confidential

4 Information to Cisco's processor design team. In fact, in October 2002, Plaintiff provided Cisco

5 with Trade Secrets and Confidential Information that set out precisely what it would take to

6 produce the CSRAM chip and how the chip would be assembled.

7                             **THE EXCLUSIVITY AGREEMENT**

8       31.    At a December 5, 2002 meeting with Cisco, Mr. Luca Cafiero, Vice President of

9 Storage Networking Group for Cisco, confirmed that Cisco would give Plaintiff exclusivity for all

10 of Cisco's CSRAM sales. By the end of the December 5, 2002 meeting, Plaintiff and Cisco agreed

11 that Plaintiff would receive exclusivity, royalty payment, and actual costs for engineering and

12 development from Cisco for the CSRAM technology. Plaintiff later discovered that Cisco was in

13 fact actively soliciting quotes on the CSRAM chip from Plaintiff's competitors at this time, and

14 that Defendant knew the details of this but never disclosed it to Plaintiff. Plaintiff is informed and

15 believes and on that basis alleges that Cisco distributed Plaintiff's Trade Secrets and Confidential

16 Information to Plaintiff's competitors, and that Defendant knew this fact but did not disclose it to

17 Plaintiff. Plaintiff is informed and believes and on that basis alleges that Defendant himself

18 distributed Plaintiff's Trade Secrets and Confidential Information to Plaintiff's competitors.

19       32.    During this December 5, 2002 meeting, Mosaic and Cisco discussed Cisco's

20 decision not to acquire Mosaic but instead decided: (1) to grant exclusivity to Mosaic for all supply

21 of CSRAM to Cisco; (2) to pay fifty percent (50%) royalty of the material cost of the final

22 packaged product and tested CSRAM; and (3) to pay actual non-recurring engineering costs of at

23 least five to six (5-6) million dollars (but not to exceed fifty (50) million dollars) to Mosaic,

24 representing the costs of the chip engineering and development.

25       33.    The $5-6 million non-recurring engineering fee was based on an estimate that

26 Plaintiff had previously quoted as the level of funding that would be necessary to bring the chip to

27 production if Plaintiff was acquired by Cisco. Mr. Cafiero agreed to this budget as long as the

28 costs did not exceed fifty (50) million dollars.

---

First Amended Complaint                9                         **Case No. 1-06-CV072920**

34.     Plaintiff reasonably relied on Cisco's promise, and Plaintiff continued to dedicate its time and energy toward the development of the CSRAM chip following Defendant Bechtolsheim and Cisco's directions and assurances. Defendant never disclosed to Plaintiff that Cisco would not perform on its promise. Based on Cisco's verbal agreement (communicated by Mr. Cafiero), Plaintiff also continued to provide additional Trade Secrets and Confidential Information to Cisco pursuant to Cisco's requests.

## CISCO BREACHES THE EXCLUSIVITY AGREEMENT

35.     Following the December 5, 2002 meeting, John McCool, Vice President of Engineering for Cisco's Gigabit Systems Business Unit, told Plaintiff that it would not receive exclusivity despite Cisco's representations, and that Cisco would not make any non-recurring engineering commitment to Plaintiff even though Cisco had promised and agreed to the same through Mr. Cafiero. Mr. McCool worked directly for Defendant in the Gigabit Systems Business Unit and was responsible for implementing Defendant Bechtolsheim's directives.

36.     Defendant hid from Plaintiff that Cisco would not perform, nor did he request Mr. McCool to perform on behalf of Cisco. In fact, Defendant agreed with his Cisco co-workers that Cisco would not perform on its promises to Mosaic.

37.     Despite Cisco's blatant failure to live up to its multiple promises, Plaintiff continued to cooperate with Mr. McCool in a failed attempt to salvage some remnant of their business relationship. However, despite Mr. Cafiero's assurance that Cisco would pay the costs of designing a chip even if they exceeded $5 million (as long as those costs did not exceed $50 million), Mr. McCool insisted that Plaintiff's proposals had to be within a $5-6 million budget. After hours of detailed analysis and planning, Plaintiff entered a proposal that even took these new Cisco "concerns" (communicated by Mr. McCool) into consideration and set new funding limits.

38.     Cisco told Plaintiff that the pending project would be transferred to Richard Ellis from Cisco's Purchasing department. Plaintiff was also told by Cisco that another final agreement between Cisco and Mosaic would be completed by January 15, 2003. Defendant Bechtolsheim, despite his continued role on Mosaic's Board of Directors, did not disclose to Plaintiff that Cisco

First Amended Complaint                         10                         Case No. 1-06-CV072920

1  did not intend to complete any agreement by January 15, 2003. In fact, Defendant continued to
2  falsely reassure Plaintiff in the face of Plaintiff's growing concerns.

3      39.     Plaintiff met with Mr. Ellis during the third week of December 2002, just prior to
4  Christmas of 2002. At this point, Plaintiff continued to reasonably believe that Cisco would live
5  up to its promises, and Defendant did not disclose to Plaintiff that Cisco would do otherwise,
6  despite his personal knowledge that Cisco was actively seeking bids from Plaintiff's competitors.
7  At the meeting, Mr. Ellis stated that if not for the Christmas holiday, the deal between Plaintiff and
8  Cisco would be completed within two to three days. Plaintiff's staff went on vacation expecting to
9  return in early January to conclude its agreement with Cisco. However, Plaintiff later discovered
10 that within a few days of its initial meeting with Mr. Ellis, Cisco had reached an independent
11 agreement with Sony as Cisco's supplier for CSRAM chips. Plaintiff contacted Mr. Ellis early in
12 the first week of January 2003 to inquire about the status. Mr. Ellis told Plaintiff that Cisco was
13 busy working out the details of the deal and that Plaintiff should not be concerned. Mr. Ellis did
14 not disclose to Plaintiff that Cisco had already reached an agreement with Sony over the holiday
15 season. At no time did Defendant Bechtolsheim disclose this information either.

16     40.     Plaintiff relied on Mr. Ellis' verbal assurance that a "deal" between Cisco and
17 Plaintiff would be closed soon, and based on that and Defendant's failure to disclose any contrary
18 facts, Plaintiff continued to dedicate its time and energy toward the development of the CSRAM
19 chip. Based on Mr. Cafiero's and Mr. Ellis' verbal assurances and Defendant's failure to disclose
20 the true facts, Plaintiff also continued to disclose Trade Secrets and Confidential Information to
21 Cisco upon Cisco and Defendant's requests.

22     41.     In January 2003, Mr. Ellis finally communicated to Plaintiff that despite prior
23 promises and reassurances, Cisco would not perform on its agreement with Mosaic or enter into
24 any new agreement, and that Mosaic should expect that some alternative transaction sponsored by
25 Cisco would be the best way to receive compensation for all of its work. Mr. Ellis referred
26 Plaintiff to Cypress Semiconductor Corporation ("Cypress") and Micron Technology, Inc.
27 ("Micron"). Mr. Ellis expressed interest in doing business with an American company, and he
28 advocated for Micron and Cypress to work with Plaintiff to submit a business proposal to Cisco.

1      42.    At the direction of Cisco and Defendant Bechtolsheim, Plaintiff traveled to Boise,

2  Idaho to try to negotiate an acquisition deal with Micron. The initial meeting with Micron went

3  well enough for the Micron team to fly out to San Jose, California to continue the negotiations.

4  Mr. Ellis attended the meeting in San Jose between Micron and Plaintiff, and tried to convince

5  Micron that by acquiring Plaintiff, Micron would be obtaining a new business relationship with

6  Cisco with respect to CSRAM technology.

7      43.    In parallel with Micron discussions and at the direction of Cisco and Defendant,

8  Plaintiff also started discussions with Cypress. Plaintiff attended a three-way meeting with

9  Cypress and Cisco where Mr. Ellis told Cypress that acquiring Plaintiff would be beneficial.

10  Based on these representations, Plaintiff and Cypress submitted a proposal to Cisco soon

11  thereafter, but Mr. Ellis told Cypress that it was too late–Cisco had already chosen all its suppliers

12  for the CSRAM technology. Defendant Bechtolsheim never disclosed to Plaintiff any deadlines or

13  other timelines that Plaintiff needed to meet, nor did Defendant apprise Plaintiff of the status of

14  negotiations with Plaintiff's competitors.

15      44.    Despite Mr. Ellis's meeting with Cypress and the proposal from Cypress, Mr. Ellis

16  told Plaintiff that Cisco had reached a second-source supplier deal with Samsung. Plaintiff

17  contacted Mr. Ellis to request a chance to work with Cypress to meet Samsung's business offer.

18  Mr. Ellis agreed to let Plaintiff attempt to meet the offer and provided Plaintiff with the financial

19  details from the Samsung proposal. Plaintiff worked with Cypress, and at the end of three days of

20  negotiations, Plaintiff was able to match Samsung's pricing. Defendant Bechtolsheim never told

21  Plaintiff that Cisco did not intend to follow through with its offer to accept a matched bid. When

22  Plaintiff contacted Cisco to deliver its proposal, Plaintiff was informed that the decision had been

23  made to deal with Samsung, and that Cisco would not even entertain Plaintiff's proposal.

24                 **FURTHER USE OF PLAINTIFF'S TRADE SECRETS AND**

25              **CONFIDENTIAL AND PROPRIETARY INFORMATION**

26      45.    Since the discontinuation of negotiations between Plaintiff and Cisco, Plaintiff has

27  significant reason to believe that the confidential CSRAM specification that Plaintiff designed as

28  well as Plaintiff's Trade Secrets and Confidential Information have been used by Cisco and

---

1   disclosed to third parties. Plaintiff has reason to believe that said Trade Secrets and Confidential

2   Information have since been directly disclosed to third parties by Defendant.

3        46.   Throughout the entire relationship between Plaintiff and Defendant, Plaintiff never

4   received any indication from Defendant that Cisco was dissatisfied or otherwise had any concerns

5   regarding Plaintiff's work. Plaintiff never received any form of remuneration for all of its work on

6   the DDR3 and CSRAM projects exclusively with Cisco. Plaintiff would not have worked on the

7   DDR3 and CSRAM projects with Cisco but for Defendant's multiple assurances that Plaintiff

8   would be adequately remunerated for its work.

9        47.   Furthermore, throughout Plaintiff's entire relationship with Defendant, Plaintiff

10   never received any indication from Defendant Bechtolsheim that Plaintiff's Trade Secrets and

11   Confidential Information would be improperly used by Cisco or disclosed to third parties.

12                          **INVESTIGATION AND DISCOVERY OF CLAIMS**

13        48.   In or about March 2003, Plaintiff, through its Board of Directors, including

14   Defendant, began investigating potential legal claims against Cisco.

15        49.   On or about June 16, 2003, while Defendant Bechtolsheim was still on Plaintiff's

16   Board of Directors, two (2) individuals under his direct supervision in Cisco wrongfully filed an

17   application for a patent which ultimately issued as a U.S. Patent as further described below.

18        50.   On or about September 4, 2003, Defendant Bechtolsheim resigned from the Board

19   of Directors.

20        51.   On or about December 14, 2003, Defendant resigned from Cisco's employment.

21        52.   Following Cisco's November 18, 2004 Objections and Responses to Mosaic's

22   Request for Production of Documents in the Mosaic-Cisco matter and the production of responsive

23   documents, Plaintiff first discovered that Defendant Bechtolsheim had in fact sat in on meetings

24   with Cisco employees and was involved in decision making at Cisco, contrary to his statements

25   otherwise. Plaintiff similarly discovered many other statements of defendant to be false and many

26   of the Defendants' breaches of fiduciary duties as a result of said document production.

27        53.   Plaintiff also recently learned that on May 16, 2006, patent US 7,047,385 B1 (the

28   "'385 Patent"), termed "High-Speed Memory for Use in Networking Systems," issued to Cisco.

1    The application for this patent was filed when Defendant Bechtolsheim was employed by Cisco

2    and on the Board of Directors for Mosaic. The two inventors named in the '385 Patent, Dipankar

3    Bhattacharya and Jeff Hirschman, were both directly supervised by Defendant Bechtolsheim when

4    he was a director of Mosaic and the head of the Gigabit Systems Business Unit at Cisco. The '385

5    Patent contains many of Plaintiff's Trade Secrets and Confidential Information, which were

6    discussed orally and in writing to the alleged "investors" by Plaintiff, during a time in which

7    Defendant was encouraging Plaintiff to release such proprietary and confidential information. At

8    no point did Defendant Bechtolsheim disclose to Plaintiff that a patent was being pursued, sought,

9    or developed by individuals under his supervision nor that Plaintiff's Trade Secrets and

10   Confidential Information were being used and disclosed for such purposes.

11         54.    In or about March 2007, Plaintiff Mosaic learned of Cisco's '385 Patent; the earliest

12   date that Plaintiff could have learned of it from public records was May 2006.

13                                **FIRST CAUSE OF ACTION**

14                           (Breach of Fiduciary Duty - Duty of Loyalty)

15         55.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs

16   1 through 54 above, as if set forth at length here.

17         56.    Defendant Bechtolsheim served simultaneously as a member of Mosaic's Board of

18   Directors and as an executive of Cisco. As a board member, Defendant Bechtolsheim owed clear

19   and statutorily established fiduciary duties to Mosaic.

20         57.    Defendant's executive position at Cisco was as Vice President and General

21   Manager of the Gigabit Systems Business Unit (the "Gigabit SBU"), the very department of Cisco

22   which dealt extensively with Mosaic regarding technical developments and business discussions

23   during the parties' interactions. Defendant even signed the NDA on behalf of Cisco.

24         58.    As a director on Plaintiff Mosaic's Board, Defendant Bechtolsheim failed to

25   recognize or acknowledge his fundamental conflict of interest by serving both as a director on

26   Mosaic's Board and as an executive in the Cisco department directly conducting business with

27   Plaintiff. Defendant failed to disengage from necessary activities with respect to the two parties'

28   //

---

First Amended Complaint                    14                    **Case No. 1-06-CV072920**

1  interaction, particularly with regard to Plaintiff, and such failures were a breach of the Defendant's
2  duty of loyalty to Plaintiff.

3       59.    Defendant Bechtolsheim's position at Cisco involved business activities with other
4  companies on technological developments, such as SRAM chips. Defendant Bechtolsheim was an
5  authorized agent of Cisco and had the apparent and/or actual authority to engage in business
6  discussions with Mosaic, and Mosaic relied on such authority.

7       60.    As a result of Defendant Bechtolsheim's dual positions in both Cisco and Mosaic,
8  he dominated Mosaic Board. Defendant Bechtolsheim exerted a significant influence over Mosaic
9  project developments and directed Mosaic to pursue the development of SRAM with Cisco, to the
10 exclusion of other potential business partners and projects. During the initial stages of Mosaic's
11 interaction with Cisco in 2000, Mosaic had to make crucial business decisions concerning who it
12 would partner with and where to apply its technical expertise in chip design. Under Defendant
13 Bechtolsheim's direction, Plaintiff's time, money and energy were devoted to the DDR3 and
14 CSRAM projects, custom projects that could not be used with any other companies (i.e. Cisco's
15 competitors) by nature of its custom design.

16      61.    Under Defendant's domination and direction, Plaintiff Mosaic wasted thousands of
17 person-hours and millions of dollars worth of funding designing, testing, and customizing a SRAM
18 chip for which Plaintiff ultimately received no remuneration.

19      62.    The actions by Defendant Bechtolsheim and the benefits conferred on Cisco put
20 Mosaic in an unequal and disadvantaged bargaining position with Cisco. Defendant
21 Bechtolsheim's role as head of the Gigabit SBU caused Mosaic to trust Cisco in its dealings at a
22 level that is higher than would be expected in an arm's length transaction. Because Defendant
23 Bechtolsheim was in a position to direct Mosaic and Cisco, Cisco obtained undue leverage in the
24 negotiation process.

25      63.    Defendant Bechtolsheim utilized his power over Mosaic as a director of Mosaic, as
26 a principal investor in Mosaic, and as the Vice President and General Manager of the very Cisco
27 business unit seeking SRAM from Mosaic, to convince Mosaic to focus exclusively on Cisco.
28 Defendant Bechtolsheim utilized his position as a director and manipulated Plaintiff Mosaic's

1   business and product development to the severe detriment of Plaintiff, and to the benefit of Cisco

2   and himself. Such directives were breaches of Defendant's fiduciary duties to Mosaic.

3       64.     In acting as described above, Defendant Bechtolsheim failed to exercise the loyalty

4   required of directors by law. Defendant failed to recognize the fundamental conflict of interest in

5   serving as both a Cisco executive and Mosaic director. Defendant failed to perform his duties in a

6   manner that served the best interests of Plaintiff, and additionally failed to protect Plaintiff's

7   interests. Plaintiff reasonably acted on Defendant's reassurances and information as a member of

8   the Board of Directors, and consequently suffered irreparable harm from his intentional breach of

9   fiduciary duty. Defendant Bechtolsheim, by repeatedly putting his own and Cisco's interests ahead

10  of Mosaic's, breached his fiduciary duty of loyalty to Mosaic.

11      65.     Plaintiff discovered Defendant's breaches of his duty of loyalty starting in February

12  2003 following the collapse of Mosaic's relationship with Cisco.

13      66.     The substantial expenditures made by Plaintiff based on Defendant's breach of duty

14  have cost Plaintiff irreparable harm and that expenditure is the proximate cause of damages to

15  Plaintiff.

16      67.     Plaintiff is entitled to damages for the wrongdoing of Defendant, in an amount to be

17  determined at trial.

18      68.     Defendant's actions were willful and malicious and Plaintiff is entitled to punitive

19  damages in an amount to be determined at trial.

20                        **SECOND CAUSE OF ACTION**

21                    (Breach of Fiduciary Duty-Duty of Honesty)

22      69.     Plaintiff incorporates by reference each and every allegation set forth in Paragraphs

23  1 through 68 above, as if set forth at length here.

24      70.     While on the Mosaic Board, Defendant Bechtolsheim chose to omit material facts,

25  facts such as: (i) his own authority within Cisco; (ii) Cisco's true intentions relating to the use of

26  Mosaic Trade Secrets and Confidential Information; (iii) Cisco's true intentions relating to an

27  acquisition; (iv) Cisco's true intentions relating to its discussions with Plaintiff's competitors; and

28  (v) Cisco's unwillingness to abide by promises made by its representatives.

1    71.    Plaintiff did not discover Cisco's true intentions or Defendant Bechtolsheim's role

2   in such intentions and decision-making processes until after discovery surfaced in the Cisco matter

3   in early 2005.

4    72.    Defendant Bechtolsheim repeatedly assured Plaintiff that Mosaic's technology was

5   far ahead of any potential competitors, and that Mosaic could rely on Defendant Bechtolsheim's

6   representations with respect to Cisco. Plaintiff later discovered, that such representations and

7   assurances were untrue, and furthermore, Defendant Bechtolsheim did not have the authority

8   within Cisco to make them.

9    73.    Defendant Bechtolsheim promised an acquisition offer by Cisco to prevent Plaintiff

10   from seeking out other potential business partners. Defendant hid several material facts from

11   Plaintiff regarding Cisco's on-going negotiations with Plaintiff's competitors. Defendant's actions

12   effectively served to lock Plaintiff out of the SRAM market.

13    74.    The above described statements and assurances, coupled with Defendant's role as a

14   member of the Board of Directors, caused Plaintiff to entrust its most vital Trade Secrets and

15   Confidential Information to Cisco and to waste thousands of person-hours working with Cisco to

16   design and test a SRAM semiconductor chip for which Plaintiff ultimately received no

17   remuneration. All of these misrepresentations were negligent and/or made in bad faith.

18    75.    Plaintiff is entitled to damages for the wrongdoing of Defendant, in an amount to be

19   determined at trial.

20    76.    Defendant's actions were malicious and oppressive, and Plaintiff is entitled to

21   punitive damages in an amount to be determined at trial.

22                         **THIRD CAUSE OF ACTION**

23                         (Breach of Fiduciary Duty- Duty of Care)

24    77.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs

25   1 through 76 above, as if set forth at length here.

26    78.    As a Mosaic board member, Defendant Bechtolsheim made specific

27   representations, as follows:

28            A.    Cisco's obligations of confidentiality (by signing the NDA);

---

**First Amended Complaint**                    17                    **Case No. 1-06-CV072920**

|   |   | B. | Cisco's business need for particular types of SRAM within the Gigabit |
| 1 |   |   | SBU; |
| 2 |   | C. | Cisco's technical requirements within the Gigabit SBU; |
| 3 |   | D. | Cisco's projected needs for SRAM within the Gigabit SBU; |

 

1    B.    Cisco's business need for particular types of SRAM within the Gigabit

2    SBU;

3    C.    Cisco's technical requirements within the Gigabit SBU;

4    D.    Cisco's projected needs for SRAM within the Gigabit SBU;

5    E.    The fact that no other competitor could match the speed and performance

6    offered by Mosaic;

7    F.    The specific steps (such as creation of a test chip) that would be required of

8    Mosaic for Cisco to work with Mosaic;

9    G.    Promises to facilitate an acquisition of Mosaic by Cisco;

10    H.    Later in the Mosaic-Cisco relationship, that Defendant was not part of the

11    specific decision making team at Cisco due to his membership on Mosaic's

12    Board of Directors; and,

13    I.    Representations to potential and actual investors in Mosaic about Cisco's

14    interest in Mosaic and its technology.

15    79.    Defendant also repeatedly assured Mosaic (i) that Mosaic did not have to worry

16    about the lack of a formal, written commitment from Cisco, (ii) that such a commitment would be

17    completed, and (iii) that Mosaic would be a supplier of SRAM for Cisco, or would otherwise

18    receive remuneration for all its work with Cisco.

19    80.    Plaintiff was not aware that other Cisco representatives did not know of the NDA

20    that Defendant Bechtolsheim had signed on their behalf. Plaintiff learned of such fact during

21    discovery proceedings in the Cisco matter beginning in early 2005. Defendant Bechtolsheim also

22    failed to investigate the veracity of the many representations and assurances he made to Mosaic,

23    and this was a flagrant violation of his fiduciary duty of care.

24    81.    Defendant knew that Plaintiff reasonably relied upon the relationship of trust that

25    existed between Defendant and Mosaic given Defendant's status as an active member of Plaintiff's

26    Board of Directors. Defendant knew that this reliance by Plaintiff would cause great damage to

27    Plaintiff's business if Cisco failed to remunerate Mosaic or uphold its promises to Mosaic.

28

---

First Amended Complaint                                    18                                    Case No. 1-06-CV072920

1    B.    Cisco's business need for particular types of SRAM within the Gigabit

2    SBU;

3    C.    Cisco's technical requirements within the Gigabit SBU;

4    D.    Cisco's projected needs for SRAM within the Gigabit SBU;

5    E.    The fact that no other competitor could match the speed and performance

6    offered by Mosaic;

7    F.    The specific steps (such as creation of a test chip) that would be required of

8    Mosaic for Cisco to work with Mosaic;

9    G.    Promises to facilitate an acquisition of Mosaic by Cisco;

10    H.    Later in the Mosaic-Cisco relationship, that Defendant was not part of the

11    specific decision making team at Cisco due to his membership on Mosaic's

12    Board of Directors; and,

13    I.    Representations to potential and actual investors in Mosaic about Cisco's

14    interest in Mosaic and its technology.

15    79.    Defendant also repeatedly assured Mosaic (i) that Mosaic did not have to worry

16    about the lack of a formal, written commitment from Cisco, (ii) that such a commitment would be

17    completed, and (iii) that Mosaic would be a supplier of SRAM for Cisco, or would otherwise

18    receive remuneration for all its work with Cisco.

19    80.    Plaintiff was not aware that other Cisco representatives did not know of the NDA

20    that Defendant Bechtolsheim had signed on their behalf. Plaintiff learned of such fact during

21    discovery proceedings in the Cisco matter beginning in early 2005. Defendant Bechtolsheim also

22    failed to investigate the veracity of the many representations and assurances he made to Mosaic,

23    and this was a flagrant violation of his fiduciary duty of care.

24    81.    Defendant knew that Plaintiff reasonably relied upon the relationship of trust that

25    existed between Defendant and Mosaic given Defendant's status as an active member of Plaintiff's

26    Board of Directors. Defendant knew that this reliance by Plaintiff would cause great damage to

27    Plaintiff's business if Cisco failed to remunerate Mosaic or uphold its promises to Mosaic.

28

---

First Amended Complaint                                    18                                    Case No. 1-06-CV072920

1   82.   Defendant Bechtolsheim utilized his position as a director of Mosaic and
2   manipulated Plaintiff Mosaic's business and product development to the severe detriment of
3   Plaintiff, and to the benefit of Cisco and himself.

4   83.   Defendant Bechtolsheim repeatedly failed to disclose information pertinent to
5   Mosaic and its shareholders' best interests. Defendant Bechtolsheim neglected his obligations as a
6   fiduciary by deliberately allowing Mosaic to operate under false assumptions for his own and for
7   Cisco's gain. This failure of full disclosure and good faith violated his fiduciary duty of due
8   diligence and his obligation to protect and act in Plaintiff Mosaic's best interests.

9   84.   Defendant Bechtolsheim, despite serving as a trusted director of the board,
10  performed his duties in a manner that not only failed to uphold his fiduciary obligation of care, but
11  also grossly and negligently harmed Plaintiff. Defendant made repeated promises and assurances,
12  which he knew to be false or misleading in light of omitted facts. By failing to confirm the
13  veracity of said statements in good faith, Defendant Bechtolsheim grossly and negligently failed to
14  exercise any of the due diligence required of him in his role as a fiduciary to Plaintiff.

15  85.   Plaintiff is entitled to damages for the wrongdoing of Defendant, in an amount to be
16  determined at trial.

17  86.   Defendant's actions were malicious and oppressive, and Plaintiff is entitled to
18  punitive damages in an amount to be determined at trial.

19                          **FOURTH CAUSE OF ACTION**

20                      (Breach of Fiduciary Duty- Duty of Good Faith)

21  87.   Plaintiff incorporates by reference each and every allegation set forth in Paragraphs
22  1 through 86, as if set forth at length here.

23  88.   Defendant Bechtolsheim utilized his power over Mosaic to convince Mosaic to
24  focus its business and development with Cisco to the detriment and exclusion of other potentially
25  viable business partners.

26  89.   Under Defendant Bechtolsheim's direction, Plaintiff invested invaluable time,
27  money and energy into custom projects that could not be used with any other companies besides
28  //

---

First Amended Complaint                          19                          Case No. 1-06-CV072920

1 Cisco. Defendant, as a member on Plaintiff Mosaic's board, knew that Mosaic would experience
2 irreparable damage if Cisco failed to remunerate Mosaic or uphold the promises it made to Mosaic.

3    90.    Plaintiff Mosaic ultimately wasted thousands of irrecoverable person-hours and
4 millions of lost dollars worth of funding on a SRAM chip designed for Cisco, under Defendant
5 Bechtolsheim's influence and direction.

6    91.    Defendant promised an acquisition offer by Cisco to prevent Plaintiff Mosaic from
7 seeking out other business opportunities while also hiding several material facts from Mosaic
8 regarding Cisco's on-going negotiations with Plaintiff's competitors. Defendant's actions
9 effectively served to lock Plaintiff out of the SRAM market.

10    92.    Defendant Bechtolsheim, while both a member on Plaintiff Mosaic's board and an
11 employee of Cisco, allowed individuals under his supervision at Cisco to file a patent on what was
12 essentially Mosaic proprietary ideas. Defendant did not inform Mosaic that a patent was being
13 filed on its ideas nor did he give credit to Plaintiff Mosaic in the '385 patent.

14    93.    Defendant Bechtolsheim, in committing above described actions, and failing to
15 uphold his role as a Mosaic director in a manner believed to be in the best interests of the
16 corporations and its shareholders, grossly violated his fiduciary obligation of good faith dealings.
17 Despite being a Mosaic director, Defendant negligent and/or maliciously failed to protect and/or
18 look after Mosaic and its shareholders best interests.

19    94.    Plaintiff did not discover Cisco's true intentions or Defendant Bechtolsheim's role
20 in such intentions and decision-making processes until after discovery surfaced in the Cisco matter
21 in early 2005, and in the case of the patent, until early 2007.

22    95.    Plaintiff is entitled to damages for the wrongdoing of Defendant, in an amount to be
23 determined at trial.

24    96.    Defendant's actions were malicious and oppressive, and Plaintiff is entitled to
25 punitive damages in an amount to be determined at trial.

26 //
27 //
28 //

---

**First Amended Complaint**                    20                    **Case No. 1-06-CV072920**

1

## FIFTH CAUSE OF ACTION

2

(Breach of Fiduciary Duty- Duty of Loyalty-Theft of Patent)

3    97.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs
4 || 1 through 96 above, as if set forth at length here.

5    98.    At no time did Defendant disclose to Plaintiff that Mosaic's Trade Secrets and
6 || Confidential Information were being used to apply for a patent by Cisco, nor did he disclose the
7 || existence of a Cisco patent application based upon and derived from said information. Defendant
8 || Bechtolsheim also did not inform Plaintiff that the patent application was developed by two (2)
9 || Cisco employees under his supervision.

10    99.    Defendant knew that Plaintiff reasonably relied upon the relationship of trust that
11 || existed between Defendant and Mosaic given Defendant's status as an active member of Plaintiff's
12 || Board of Directors. Plaintiff would not have agreed to released such detailed Trade Secrets and
13 || Confidential Information to Cisco but for Defendant's influence as a trusted member of Mosaic's
14 || board.

15    100.    Plaintiff reasonably relied on Defendant's role as a director to believe that
16 || Defendant would not misappropriate proprietary and confidential information, mislead or conceal
17 || material facts, perform bad faith directives, or violate his fiduciary duties as a director in any other
18 || form or manner.

19    101.    As a director, Defendant Bechtolsheim had a clear duty to protect Mosaic's
20 || intellectual property. Not only did he fail to protect Mosaic's proprietary and confidential
21 || information, Defendant instead purported ownership of it and actively helped others take the credit.

22    102.    In or about March 2007, Plaintiff Mosaic learned of Cisco's '385 Patent; the earliest
23 || date that Plaintiff could have learned of it from public records was May 2006.

24    103.    Plaintiff is entitled to compensatory relief and other damages for the
25 || misappropriation of its Trade Secrets and Confidential Information into a Cisco patent, and any
26 || subsequently developed related patents, in an amount to be determined at trial.

27    104.    Defendant's actions were malicious and oppressive, and Plaintiff is entitled to
28 || punitive damages in an amount to be determined at trial.

First Amended Complaint                        21                        Case No. 1-06-CV072920

1    105.    Defendant's actions were malicious and oppressive, and Plaintiff is entitled to
2    punitive damages in an amount to be determined.

3    106.    Plaintiff is entitled to damages for the wrongdoing of Defendant, in an amount to be
4    determined at trial.

5                                    **SIXTH CAUSE OF ACTION**

6                    (Breach of Fiduciary Duty- Duty of Care- Theft of Trade Secrets)

7    107.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs
8    1 through 106 above, as if set forth at length here.

9    108.    The Plaintiff's NDA, which Defendant Bechtolsheim signed on behalf of Cisco
10   stipulated that Plaintiff's Trade Secrets and Confidential Information could be used only for
11   purposes of evaluating their potential business relationship.

12   109.    Cisco's business negotiations granted Cisco access to Mosaic and its Trade Secrets
13   and Confidential Information, insight which other companies did not have. Cisco had access to
14   Mosaic's financial and funding information and thus was aware of Mosaic's negotiating leverage
15   with other parties. Plaintiff would not have provided access to said information but for Defendant
16   Bechtolsheim's multiple verbal and other assurances to Plaintiff.

17   110.    In breach of the NDA, Defendant Bechtolsheim provided Cisco with Mosaic Trade
18   Secrets and Confidential Information for purposes other than those stipulated by the
19   Non-Disclosure Agreement ("NDA"). Defendant provided Cisco with confidential Mosaic Trade
20   Secrets and Confidential Information with full knowledge that Cisco was utilizing this information
21   to aid in reaching supplier agreements with Mosaic's competitors.

22   111.    Defendant directly disclosed Mosaic Trade Secrets and Confidential Information to
23   Mosaic competitors and to other third parties. Plaintiff became aware of such direct disclosures by
24   Defendant following discovery in the Mosaic-Cisco matter in early 2005. These disclosures not
25   only breached Defendant Bechtolsheim's obvious duty of loyalty to Plaintiff and to his obligation
26   to protect Plaintiff's proprietary and confidential information, but were also in breach of Cisco's
27   NDA, which Defendant signed on behalf of Cisco.

28

First Amended Complaint                          22                          Case No. 1-06-CV072920

1     112.   As a director on Mosaic's board, Defendant Bechtolsheim breached his fiduciary

2 duty by disseminating and allowing third parties and Plaintiff competitors access to Plaintiff's

3 proprietary and confidential information. Defendant failed to act in Plaintiff's best interest and

4 instead acted in a negligent and/or bad faith manner.

5     113.   In a gross breach of fiduciary duty and an obvious misappropriation of trade secrets,

6 Defendant Bechtolsheim not only failed to protect Mosaic's Trade Secrets and Confidential

7 Information, but instead facilitated its misappropriation to Plaintiff Mosaic's detriment.

8     114.   Plaintiff did not discover Defendant Bechtolsheim's personal role in such trade

9 secret misappropriations until after discovery surfaced in the Cisco matter in early 2005

10     115.   Plaintiff is entitled to damages for the wrongdoing of Defendant, in an amount to be

11 determined at trial.

12     116.   Defendant's actions were malicious and oppressive, and Plaintiff is entitled to

13 punitive damages in an amount to be determined at trial.

14 **SEVENTH CAUSE OF ACTION**

15 (Constructive Fraud)

16     117.   Plaintiff incorporates by reference each and every allegation set forth in Paragraphs

17 1 through 117 above, as if set forth at length here.

18     118.   Defendant's misrepresentations, coupled with Defendant's fiduciary duty, also

19 constitute constructive fraud.

20     119.   As discussed above, Defendant Bechtolsheim had a fiduciary duty to Mosaic to

21 preserve, improve, and protect Mosaic's viability, interests, and intellectual property, duties which

22 Mosaic justifiably relied upon. Defendant Bechtolsheim breached his fiduciary duty to Mosaic in

23 numerous ways.

24     120.   Defendant Bechtolsheim made several representations to Plaintiff that Cisco was to

25 provide financial remuneration to Plaintiff. Such representations and inducements were made all

26 in effort to induce Mosaic to continue to trust Cisco, and to continue providing Cisco with Mosaic

27 Trade Secrets and Confidential Information as well as its engineering expertise. Defendant

28 Bechtolsheim made assurances that Mosaic would receive purchases by Cisco in the form of a

1  commercial agreement, a non-recurring engineering fee, investment by Cisco in Mosaic, or

2  acquisition of Mosaic by Cisco.

3      121.    Said representations were in fact false. Cisco did not provide financial

4  remuneration to Plaintiff.

5      122.    Additionally, Defendant failed to disclose that Cisco was in fact soliciting proposals

6  from companies that would compete with Cisco. Defendant further failed to disclose that Cisco

7  had not made any plans to provide financial remuneration to Plaintiff.

8      123.    Reasonably relying on the false representations made by Defendant Bechtolsheim,

9  Mosaic advised Cisco in the design of DDR3 chip, advised Cisco in the design of the CSRAM

10  specification, advised Cisco in the architecture and engineering of the CSRAM chip, aided in the

11  development and engineering in the CSRAM chip, and responded to Cisco's repeated inquiries

12  regarding the specific proprietary design details needed to bring the chip to production.

13      124.    Plaintiff did not discover Cisco's true intentions or Defendant Bechtolsheim's role

14  in such intentions until after discovery surfaced in the Cisco matter in early 2005

15      125.    Defendant's actions have proximately caused damage to Plaintiff, and Plaintiff is

16  entitled to recover such damages in an amount to be determined at trial.

17      126.    Defendant's actions were malicious and oppressive, and Plaintiff is entitled to

18  punitive damages in an amount to be determined at trial.

19  **EIGHTH CAUSE OF ACTION**

20  (Concealment)

21      127.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs

22  1 through 126 above, as if set forth at length here.

23      128.    As a director of Plaintiff, Defendant Bechtolsheim owed a fiduciary duty to

24  Plaintiff, including the duty to disclose important facts pertinent to Mosaic's interests.

25      129.    As discussed in detail above, over the course of the interaction between Mosaic and

26  Cisco from 2000 through 2003, Defendant Bechtolsheim intentionally failed to disclose several

27  material facts to Plaintiff. Specifically, Defendant Bechtolsheim concealed the following

28  important facts from Plaintiff:

| | (i) | That Cisco was using Mosaic Trade Secrets and Confidential Information |
| --- | --- | --- |
| | | for purposes other than those allowed by the NDA, including to develop |
| | | competitive bids, |
| | (ii) | That Cisco was disclosing Mosaic Trade Secrets and Confidential |
| | | Information to third parties, |
| | (iii) | That Defendant Bechtolsheim himself was using Mosaic Trade Secrets and |
| | | Confidential Information for purposes other than those allowed by the NDA |
| | | as well as disclosing Mosaic Trade Secrets and Confidential Information to |
| | | third parties, |
| | (iv) | That Cisco did not in fact intend to acquire Plaintiff or otherwise provide |
| | | any remuneration for Plaintiff's work for Cisco, |
| | (v) | That Cisco had applied for a patent derived from and based upon Mosaic's |
| | | Trade Secrets and Confidential Information, and |
| | (vi) | Other important facts discussed in Paragraphs 1 through 123 above. |

Plaintiff is informed and believes, and on that basis alleges that Defendant Bechtolsheim intended to deceive Plaintiff by concealing these important facts.

130.    Plaintiff did not know of the important facts concealed by Defendant, and Plaintiff reasonably relied on Defendant Bechtolsheim's deception.

131.    Plaintiff did not discover Defendant Bechtolsheim's concealments until after discovery surfaced in the Cisco matter in early 2005

132.    Plaintiff was harmed and Defendant Bechtolsheim's concealment of important facts from Plaintiff was a substantial factor in causing Plaintiff's harm and in causing substantial damages to Plaintiff.

133.    Defendant's wrongful actions were malicious and oppressive, and Plaintiff is entitled to punitive damages in an amount to be determined at trial

//

//

//

1            **PRAYER FOR RELIEF**

2        WHEREFORE, Plaintiff prays for a judgment against Cisco, jointly and severally, as

3    follows:

4        A.    On the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of

5            Action, for damages and punitive damages in an amount to be determined at trial;

6        B.    For reasonable attorney's fees, as authorized by law; and,

7        C.    For such other and further relief as the Court deems just and proper.

8

9    Dated: July 18, 2007                     RUSSO & HALE LLP

10                                   By:      *Jack Russo*

11                                            Jack Russo
                                            Christopher Sargent
12
                                            Attorneys for Plaintiff
13                                          MOSAIC SYSTEMS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

First Amended Complaint              26              Case No. 1-06-CV072920



1  JACK RUSSO (State Bar No. 96068)
   CHRISTOPHER SARGENT (State Bar No. 246285)
2  RUSSO & HALE LLP
   401 Florence Street
3  Palo Alto, CA 94301
   Telephone: (650) 327-9800
4  Facsimile: (650) 327-3737
   Email: jrusso@computerlaw.com
5          csargent@computerlaw.com

6  Attorneys for Plaintiff
   MOSAIC SYSTEMS, INC

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SANTA CLARA

10
   MOSAIC SYSTEMS, INC.,                    Case No. 1-04 CV 016867 (Consolidated for
11                                          limited purposes with Case No. 1-06 CV
                         Plaintiff,         072920)
12
                  v.                        **PROOF OF SERVICE**
13
   CISCO SYSTEMS, INC., and DOES 1-20,
14
                         Defendants.
15
   MOSAIC SYSTEMS, INC.,
16
                         Plaintiff,
17
                  v.
18
   ANDREAS BECHTOLSHEIM, and DOES 1-
19 20,

20                       Defendants.

21       I am a resident of the State of California, over the age of eighteen years, and not a party to

22 the within action. I work with the law firm of RUSSO & HALE, whose address is 401 Florence

23 Street, Palo Alto, California and am readily familiar with RUSSO & HALE's practice for mailing

24 and know that in the ordinary course of RUSSO & HALE's business practice, I served the within

25 documents:

26       **FIRST AMENDED COMPLAINT**

27       **PROOF OF SERVICE [UNEXECUTED]**

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com℠  **Proof of Service**                    1                    Case No. 1-04 CV 016867

1

2  ☒ MAIL: I am readily familiar with the firm's  ☐ FAX: I caused to be transmitted via
   practice of collection and processing          facsimile the document(s) listed above to the
3  correspondence for mailing. Under that         fax number(s) set forth below on above-listed
   practice, the document(s) described herein     date. The transmission was reported as
4  would be sealed in an envelope which would be  complete and without error by the facsimile
5  deposited with the United States Postal Service machine at telephone number (650) 327-3737.
   on the above-listed date with postage thereon
6  fully prepaid in the ordinary course of business.

7  ☐ HAND: I personally delivered the above-      ☒ ELECTRONIC MAIL: I caused to be
   listed documents on the date set forth above to transmitted the above-referenced document(s)
8  an authorized courier to be served by hand by  via electronic mail to the persons at the e-mail
   said courier on the date set forth above to the addresses set forth below.
9  person(s) at the address(es) set forth below.
10 ☐ FEDEX: I am readily familiar with the        ☐ PERSONAL: I personally served the above-
   practice of Russo & Hale LLP for collection and listed documents to the person(s) at the
11 processing of correspondence for overnight     address(es) set forth below by: (a) handing to
   delivery and know that the document(s)         the person(s); or, (b) leaving it at the person'(s)
12 described herein were deposited on the date set office with a clerk or other person in charge, or
13 forth below in a box or other facility regularly if no on was in charge, leaving it in a
   maintained by FedEx for overnight delivery in  conspicuous place in the office.
14 an envelope or package designated by FedEx
   with delivery fees paid or provided for,
15 addressed to the person(s) at the address(es) set
16 forth below.

17 Howard Holderness, Esq.
18 Lorelei A. Craig, Esq.
   Morgan Lewis LLP
19 One Market Street, Spear Tower
   San Francisco, CA 94105
20 Fax: (415) 442-1001
   hholderness@morganlewis.com
21 lorelei.craig@morganlewis.com

22

23      I declare under penalty of perjury under the laws of the State of California that the above is

24 true and correct based upon my personal knowledge.

25      Executed on July 18, 2007 at Palo Alto, California.

26

27                                              _____
                                                Su-Han Wang
28